UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2012 FEB 14  PM 3:41

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Petitioner, ) <br> ) <br> v. ) <br> ) <br> $32,770.03, MORE OR LESS, SEIZED ) <br> FROM GUITAR CENTER ) <br> ACCOUNT # XXXXXX0469 FOR THE ) <br> PURCHASE OF GOODS IN THE ) <br> NAME OF ROOFTOP PRODUCTIONS, ) <br> a.k.a. BENJAMIN STEINER AND ) <br> LARRY HACKNEY ) <br> ) <br> and ) <br> ) <br> 77 ASSORTED PIECES OF AUDIO ) <br> RECORDING EQUIPMENT AND ) <br> ACCESSORIES, MORE OR LESS, ) <br> ) <br> Respondents. ) | CIVIL ACTION NO. <br><br> **A12CV0140 SS** |

## VERIFIED COMPLAINT FOR FORFEITURE

Comes now Petitioner, United States of America, acting by and through the United States Attorney for the Western District of Texas and the undersigned Assistant United States Attorney, pursuant to Rule G, Supplemental Rules of Federal Rules of Civil Procedure, and respectfully states as follows:

### I.
### NATURE OF THE ACTION

This action is brought by the United States of America seeking forfeiture to the United States of the properties described below:

1. $32,770.03, More or Less, Seized From Guitar Center Account # XXXXXX0469 in the Name of Rooftop Productions, a.k.a. Benjamin Steiner and Larry Hackney;

2. One (1) Avalon AD2022 Dual Mono Microphone Preamplifier;
3. Two (2) Shure SM58 Mics;
4. Four (4) Shure SM57 Instrument/Vocal Mics;
5. One (1) Shure Beta 52A Kick Drum Mic;
6. Three (3) Sennheiser MD421 II Microphones;
7. One (1) Sennheiser E604 Drum Microphones, 3-Pack;
8. One (1) AKG D112 Kick Drum Microphone;
9. One (1) Neumann U87 Ai Shockmount Set Z Microphone With Box;
10. Two (2) Live Wire Advantage Series ¼" Straight Instrument Cables (18 Foot 6 inches);
11. Two (2) Live Wire Advantage Series ¼" Angled-Straight Instrument Cables (18 Foot 6 inches);
12. Two (2) Hoss 7-Pin Phantom MIDI Cables;
13. Two (2) O-Tray Microphone Stand Tray and Drink Holders;
14. One (1) Neumann TLM 49 Condenser Studio Microphone;
15. Twenty (20) Live Wire Advantage Standard EXM Series Microphone Cables (25 Foot);
16. Four (4) Live Wire MIDI Cables (Black 15 Foot);
17. Two (2) DR Pro DR Pro DR256 M S1500BK Low Profile Mic Boom Stands;
18. Four (4) DR Pro Tripod Mic Boom Stands with Telescoping Boom;
19. Three (3) KRK VXT 8 Powered Studio Monitors;
20. Two (2) Neumann KM 184 Small Diaphragm Condenser Microphones (Matte Black);
21. Two (2) KRK Expose E8B Power Monitors;
22. Three (3) Aviom A -16II Personal Mixers (Aviom Blue);
23. One (1) Aviom Single Starter System;
24. Four (4) Live Wire Solutions ADI Active DI Direct Boxes;
25. One (1) Rupert Neve Design Portico 5012 Duo Mic Preamp;
26. One (1) M-Audio Studio BX5a Deluxe Active Monitor;
27. One (1) Furman Pl-Pro DMC Power Conditioner;
28. One (1) Digidesign M Box 2 Educational;
29. Two (2) AKG C 414 XL II Condenser Microphones;
30. One (1) Primacoustic VoxGuard Microphone Isolation Panel; and
31. Two (2) Propellerhead Reason 6;

hereinafter, collectively referred to as the "Respondent Properties."

## II.
## VIOLATIONS

This is a civil forfeiture action *in rem* brought against the Respondent Properties for violations of 31 U.S.C. § 5324(a)(1) and (a)(3), subject to forfeiture to the United States of America

pursuant to 31 U.S.C. § 5317(c)(2), which states:

> **31 U.S.C. § 5317. Forfeiture**
> **(c)(2) Civil Forfeiture**— Any property involved in a violation of section . . . 5324 of this title, or any conspiracy to commit any such violation, and any property traceable to any such violation or conspiracy, may be seized and forfeited to the United States in accordance with the procedures governing civil forfeitures in money laundering cases, pursuant to 18 U.S.C. § 981(a)(1)(A).

### III.
### JURISDICTION AND VENUE

Under 28 U.S.C. § 1345, the Court has jurisdiction over an action commenced by the United States, and under 28 U.S.C. § 1355(a), jurisdiction over an action for forfeiture. This Court has *in rem* jurisdiction over the Respondent Properties under 28 U.S.C. §§ 1355(b) and 1395. Venue is proper in this district, pursuant to 28 U.S.C. § 1355(b)(1), because the acts or omissions giving rise to the forfeiture occurred in this District, and pursuant to 28 U.S.C. § 1355(b)(1)(B) and 1395(b), because the Respondent Properties are found in this District.

The Respondent Properties were seized in Austin, Texas on January 20, 2012 by federal agents with the United States Secret Service. The Respondent Properties have remained in the custody of the United States Secret Service, within the jurisdiction of the United States District Court, Western District of Texas, Austin Division, and shall remain within the jurisdiction of the court pending litigation of this case.

### IV.
### FACTS IN SUPPORT OF VIOLATIONS

This case involves the structuring of $58,995.00 in United States currency to purchase money orders at various retail locations throughout the Austin, Texas area, including CVS, HEB, and the Money Box, for the purchase of audio recording equipment and accessories from the Guitar Center.

As fully explained below, the United States Secret Service ("USSS") was contacted on January 3, 2012 by an employee of the Money Box concerning information that three individuals, identified as Benjamin Steiner, Larry Hackney, and Brandon Harris, had purchased $55,995.00 in money orders from the Money Box.

An investigation by the USSS showed that Steiner, Hackney, and Harris, employees of Rooftop Productions ("Rooftop"), had structured the purchase of money orders from the Money Box that were subsequently used to purchase audio recording equipment and accessories from the Guitar Center. Money Box, a financial institution, is subject to the reporting requirements of 31 U.S.C. § 5313. Specifically, by using cash to purchase money orders from the Money Box in increments of less than $10,000.00 and using said money orders to purchase audio recording equipment and accessories from the Guitar Center, Steiner, Hackney, and Harris attempted to prevent the Money Box from filing any type of Cash Transaction Report ("CTR") as required by 31 U.S.C. § 5313. This structuring activity is a violation of 31 U.S.C. § 5324(a)(1) and (a)(3).

In late November, 2011, Steiner and Hackney, identified through the investigation as the Chief Executive Officer and Chief Operating Officer of Rooftop, went to the Guitar Center, a retailer of high end audio recording equipment, located at 2525 W. Anderson Lane, Austin, Texas, where they met with a Guitar Center salesman. During the meeting, Steiner and Hackney created an account at Guitar Center in the name of Rooftop, account number XXXXXX0469. In addition, Steiner and Hackney placed an order for approximately $63,000.00 in audio recording equipment and accessories. To pay for the audio recording equipment and accessories, Steiner and Hackney told the salesman that they wanted to partially pay with $30,000.00 in cash. The Guitar Center salesman gave Steiner and Hackney the required IRS 8300 form that must be completed for any

transaction over $10,000.00 in currency. Steiner declined to complete the IRS 8300 form. He also declined to complete the purchase of the audio recording equipment and accessories as he decided to return later and make payment by another method.

After leaving the Guitar Center, Steiner contacted its salesman by telephone to ask if the Guitar Center could accept money orders without triggering the required completion of the IRS 8300 form. It must be noted that a purchase over $10,000.00 using money orders must be recorded using an IRS 8300 form, the same as cash. To circumvent the completion of a CTR or an IRS 8300 form, Hackney, Steiner and Harris began using cash funds in amounts under $10,000.00 to purchase money orders from various Money Box locations. On December 1, 2011, Hackney purchased $1,995.00 in money orders from the Money Box location at 2712 S. Congress Avenue, Austin, Texas. On the same date, approximately three (3) hours later, Steiner purchased $9,000.00 in money orders from the Money Box location at 2205 E. 7th Street, Austin, Texas.

On December 2, 2011, Hackney purchased $6,000.00 in money orders from the Money Box location at 2712 S. Congress Avenue, Austin, Texas. On the same date, only four (4) minutes later, Steiner purchased $9,000.00 in money orders from the same Money Box location. To purchase the audio recording equipment and accessories, on December 2, 2011, Steiner, Hackney, and Harris returned to the Guitar Center and presented $28,995.00 in money orders from the Money Box and other retail establishments as payment toward the approximately $60,000 worth of equipment and accessories and as escrow to allow the Guitar Center to begin the ordering process. The salesman required Steiner and Hackney to fill out the money orders and write their driver's license numbers on each money order. The purchased audio recording equipment and accessories were delivered in mid-December to the offices of Rooftop located at 7901 Cameron Road, Suite 335, Austin, Texas.

On December 28, 2011, Steiner purchased $6,000.00 in money orders from the Money Box location at 1643 Research Boulevard, Austin, Texas.  On the same date, only 46 minutes later, Hackney purchased $9,000.00 in money orders from the Money Box location at 2521 Rutland Drive, Austin, Texas.  In addition, on December 29, 2011, Hackney purchased $6,000.00 in money orders from the Money Box location at 2712 S. Congress Avenue, Austin, Texas.  On the same date, approximately four (4) hours later, Harris purchased $9,000.00 in money orders from the same Money Box location.

Steiner, Hackney, and Harris purchased a total of 56 money orders on four (4) different days at four (4) different Money Box locations during the month of December.  The total amount of money orders purchased at each Money Box store on each date mentioned above ranged in value between $1,995.00 and $9,000.00, for a total of $55,995.00 purchased over the four (4) different days, as summarized below:

| Individual and Date | Time | Total Amount of Money Orders Purchased | Money Box Location | Aggregate Total of Daily Money Order Transactions |
|---|---|---|---|---|
| Larry Hackney December 1, 2011 | 3:47 p.m. | $1,995.00 | 2712 S. Congress | |
| Benjamin Steiner December 1, 2011 | 6:33 p.m. | $9,000.00 | 2205 E. 7th Street | $10,995.00 |
| | | | | |
| Larry Hackney December 2, 2011 | 11:54 a.m. | $6,000.00 | 2712 S. Congress | |
| Benjamin Steiner December 2, 2011 | 11:58 a.m. | $9,000.00 | 2712 S. Congress | $15,000.00 |
| | | | | |

| Benjamin Steiner December 28, 2011 | 5:18 p.m. | $6,000.00 | 11643 Research Blvd. | |
| Larry Hackney December 28, 2011 | 6:04 p.m. | $9,000.00 | 2521 Rutland Drive | $15,000.00 |
| | | | | |
| Larry Hackney December 29, 2011 | 11:34 a.m. | $6,000.00 | 2712 S. Congress | |
| Brandon Harris December 29, 2011 | 3:37 p.m. | $9,000.00 | 2712 S. Congress | $15,000.00 |
| | **Totals** | **$55,995.00** | | **$55,995.00** |

There were two distinct facts in common related to the purchase of the 56 money orders: (1) all money orders were paid for using primarily twenty dollar bills; and (2) all money orders were made payable to only one business, the Guitar Center. The money order purchasing activity of Steiner, Hackney, and Harris shows that they were dividing an amount of cash greater than the $10,000.00 reporting requirement into smaller amounts to avoid filing CTRs or an IRS 8300 form.

Steiner, Hackney, and Harris sometimes arrived at the Money Box locations together and would purchase like amounts of money orders, always keeping the total amount purchased by each individual under the $10,000.00 threshold. The above chart shows that the total amount of cash used on each date exceeded $10,000.00. Based on the time and location of the money order purchases, Steiner, Hackney, and Harris purchased the money orders at the same branch on the same date or drove, after waiting a short period of time, from one Money Box location to another to make the money order purchases. The identities of Steiner, Hackney, and Harris were confirmed by Money Box employees on December 1, 2, 28, and 29, 2011 because of the company policy requiring a driver's license or passport to be produced and checked when purchasing a money order with a value equal to or greater than $1,000.00.

7

On December 29, 2011, Steiner, Hackney, and Harris returned to the Guitar Center to present $30,000 in Money Box money orders to the salesman as final payment for the approximately $63,000 worth of audio equipment and accessories. Harris wrote his driver's license number on all of the presented money orders. On January 20, 2012, a seizure warrant was issued for the seizure of the structured funds held in credit or on deposit at Guitar Center in account number XXXXXX0469 in the name of Rooftop Productions, a.k.a. Benjamin Steiner and Larry Hackney, for the purchase of audio recording equipment and accessories. During the execution of the seizure warrant on January 20, 2012, agents of the USSS seized a total of $32,770.03, more or less, in funds held in credit or on deposit at Guitar Center in account number XXXXXX0469 in the name of Rooftop Productions, a.k.a. Benjamin Steiner and Larry Hackney, part of the Respondent Properties.

In addition, on January 20, 2012, a search and seizure warrant was issued for the search of the offices of Rooftop and seizure of the audio recording equipment and accessories purchased from the Guitar Center with structured funds. On January 20, agents arrived at the offices of Rooftop and did not find any occupants. During the search of the Rooftop offices, agents found and seized 77 assorted pieces of audio recording equipment and accessories, the remaining Respondent Properties more fully described above, that were identified using the Rooftop Quotes and Order Summaries. These Respondent Properties had been purchased from the Guitar Center with structured funds.

While executing the search warrant, an agent attempted to call Steiner to discuss the search of the Rooftop premises and seizure of the audio recording equipment and accessories. Agents believed the telephone number called belonged to Steiner, but the call was answered by Hackney. The agent told him about the search and seizure of the items purchased at the Guitar Center.

Hackney immediately told the agent that he would have Steiner return the call. A short time later, Steiner called the agents.

The agent then informed Steiner about the search and seizure warrant and the basis for it. Steiner told the agent that he owns four (4) businesses, including a mobile car wash, that deal primarily in cash. He also stated that the funds used to purchase the goods from the Guitar Center were legitimate business profits. Steiner stated that he did have a bank account. When asked why he had not used a bank check or cashier's check to purchase the goods from the Guitar Center, Steiner replied "I guess so, that would have been a better bet." Steiner declined to meet the agents at the offices of Rooftop while they were executing the search and seizure warrant.

On January 25, 2012, agents interviewed Hackney at his home. Hackney told agents that Steiner made the decision to use money orders to purchase the audio recording equipment and accessories as he did not want to use cash. He also said that Steiner had an unspecified problem with the IRS forms and did not want to raise any "red flags." Hackney further stated that Steiner had contacted a friend in the banking business about using money orders for the Guitar Center purchase. This friend advised Steiner that making purchases with money orders "would not trigger the red flags," but the money orders had to be purchased in transactions below $10,000.00 to avoid the reporting requirements.

Hackney admitted that he purchased money orders, in amounts totaling less than $10,000.00, on several occasions with cash provided by Steiner. The cash typically consisted primarily of well worn twenty dollar bills and was bundled with a rubber band. In addition, to buying them at the Money Box, he purchased money orders at CVS and HEB. Hackney also admitted that the whole

scheme to purchase the money orders "felt sketchy" to him, and he had the mindset of "the less I know, the better."

Agents also attempted to contact Brandon Harris on January 26, 2012 to schedule an interview. Harris agreed to appear for an interview on January 27, 2012, but called on the same date to cancel the interview.

Considering in totality the above-described facts and circumstances, the Respondent Properties are involved in or traceable to cash structured and used to purchase money orders to avoid currency reporting requirements in violation of 31 U.S.C. § 5324(a)(1) and (a)(3) and subject to forfeiture to the United States of America pursuant to 31 U.S.C. § 5317(c)(2).

## V.
## PRAYER

WHEREFORE, Petitioner, United States of America, prays that due process issue to enforce the forfeiture of the Respondent Properties, that due notice, pursuant to Rule G(4), be given to all interested parties to appear and show cause why forfeiture should not be decreed,[1] that a warrant for an arrest *in rem* be ordered, that the Respondent Properties be forfeited to the United States of America, that the Respondent Properties be disposed of in accordance with the law, and for any such further relief as this Honorable Court deems just and proper.

---

[1] Appendix A, which is being filed along with this complaint, will be sent to those known to the United States to have an interest in the Respondent Properties.

Respectfully submitted,

ROBERT PITMAN
United States Attorney

By: _____
Jennifer S. Freel
Assistant United States Attorney
816 Congress Avenue, Suite 1000
Austin, Texas 78701
Tel: (512) 916-5858
Fax: (512) 916-5855
Texas State Bar No. 24051327

## VERIFICATION

Special Agent, David M. Konopczyk, declares and say that:

1. I am a Special Agent with the United States Secret Service, assigned to the Austin Resident Office, and am the investigator responsible for the accuracy of the information provided in this litigation; and

2. I have read the above Verified Complaint for Forfeiture and know the contents thereof; that the information contained in the Verified Complaint for Forfeiture has been furnished by official government sources; and based on information and belief, the allegations contained in the Verified Complaint for Forfeiture are true.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the __14__ day of February, 2012.

David M. Konopczyk, Special Agent
United States Secret Service